UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HUMBERTO TORRES FLORES,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,[1]<br>Defendant. | Case No. CV 17-00305-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Humberto Torres Flores ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

In December 2012, Plaintiff filed applications for DIB and SSI alleging disability beginning on April 23, 2009. See Administrative Record ("AR") 204-17. His applications were denied initially and on reconsideration. See AR 120-30. Plaintiff then requested and received a hearing before an administrative law judge ("ALJ"), during which the ALJ heard testimony from Plaintiff, who was represented by counsel, from a testifying medical expert, and from a vocational expert ("VE"). See AR 131-35. On September 8, 2015, the ALJ issued an unfavorable decision. See AR 18-36.

The ALJ noted that Plaintiff had severe impairments of carpal tunnel syndrome, status post-release; left elbow injury, status post-surgery; obesity; and depression. See AR 27. After considering the relevant medical evidence and Plaintiff's symptom testimony, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of "light" work with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; to push/pull within the weight limitations; to stand/walk for 6 hours out of an 8-hour workday; to sit for 6 hours out of an 8-hour workday; to handle and finger frequently, but not repetitively; to reach overhead, bilaterally, occasionally; and not to crawl, climb ladders, ropes, and scaffolds, or forcefully grip or grasp. See AR 29. The ALJ also determined that Plaintiff is limited to non-complex, routine tasks and to jobs requiring no more than a third-grade level of English communication with no reading or writing in English. See id. Based on the VE's testimony, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff could work as a folder, basket biller, and conveyor belt bakery worker. See AR 35. Thus, the ALJ found that Plaintiff was not disabled. See id.

On November 10, 2016, the Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 5-7. Plaintiff then sought review by this Court. See Dkt. 1.

## II.

## DISCUSSION

The parties dispute whether the ALJ properly weighed the treating physician's opinion, assessed Plaintiff's credibility, assigned Plaintiff's RFC, and determined that Plaintiff could do other work. See Dkt. 23 ("JS") at 3.[2]

### A. Medical Evidence

Plaintiff maintains that the ALJ failed to properly consider treating physician Dr. Montgomery's opinion. See id. at 3-13, 22-24.

#### 1. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).[3] A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a

---

[2] All page citations to electronically-filed documents are to the CM/ECF pagination.

[3] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, citations to regulations herein are to the version in effect on September 8, 2015.

nonexamining physician's. See Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citations omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

An "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). But an ALJ is not bound to accept or apply a workers' compensation physician's status designation, such as temporary total disability, because such terms of art are "not equivalent to Social Security disability terminology." Dawson v. Colvin, No. 14-00018, 2014 WL 5420178, at *5 (C.D. Cal. Oct. 23, 2014) (citing Desrosiers v. Sec. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.

1988)). An ALJ is required to "translate" such terms "into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." Booth, 181 F. Supp. 2d at 1106. The ALJ's decision does not need to contain an "explicit 'translation,'" but it should indicate that the ALJ recognized the differences between the workers' compensation and Social Security terminology and took those differences into account in evaluating the medical evidence. Id.

**2. Analysis**

Plaintiff alleges that the ALJ erred by assigning less weight to treating physician Dr. Montgomery's medical opinions. See JS at 9-13. Specifically, Plaintiff contends that the ALJ ignored Dr. Montgomery's recommended exertional level at which Plaintiff could work—i.e., "no heavy lifting which is defined in the workers compensation arena." Id. at 8. Plaintiff also argues that the ALJ did not address Dr. Montgomery's assessments of no twisting, pushing, pulling, or manipulating with the hands and erred by failing to translate Dr. Montgomery's workers' compensation-related restrictions into the corresponding Social Security terminology. See id. at 9. Last, Plaintiff alleges that the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Montgomery's opinions. See id. at 9-12. The Court finds that the ALJ did not err by assigning only some weight to Dr. Montgomery's medical opinions.

As an initial matter, Plaintiff's claim that Dr. Montgomery stated that Plaintiff "was precluded from manipulating with the hands," id. at 22, is misplaced. Instead Dr. Montgomery recommended that Plaintiff not engage in "heavy lifting" and refrain from "repetitive or forceful gripping, twisting, pushing, pulling, or manipulating with the hands." AR 372 (emphasis added); see also AR 476 (stating that Plaintiff is "unable to do heavy or repetitive work with hands"). The ALJ's RFC was in fact consistent with Dr. Montgomery's

5

restrictions. The ALJ concluded that Plaintiff was precluded from "forceful gripping or grasping," repetitively handling and fingering, carrying or lifting more than "20 pounds occasionally and 10 pounds frequently," and pushing or pulling more than the weight limitations. AR 29. The ALJ added, however, that Plaintiff can "frequently" handle and finger. See id. Plaintiff has not directed the Court to any medical opinion on which the ALJ substantially relied that contradicts the relevant manipulative restrictions that Dr. Montgomery recommended. Accordingly, the ALJ's RFC determination must be upheld. See Carmickle, 533 F.3d at 1165.

Even assuming that the ALJ discounted Dr. Montgomery's medical opinion to some degree, the ALJ provided specific and legitimate reasons to question Dr. Montgomery's ultimate restrictions. Notably, the ALJ discussed Dr. Schmitter's opinions stating that Dr. Montgomery's objective examination findings were "normal" and that Plaintiff's grip strength was also "normal." See AR 31; see also AR 370. The ALJ also reported that, despite Dr. Montgomery's work restrictions, Dr. Schmitter concluded from the same objective medical evidence that "[Plaintiff's] ability to lift/carry was not significantly impaired" and there was no "evidence of sensory loss or motor loss." AR 31. While Dr. Schmitter's contrary opinion would "not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when," as here, "it is consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at 1149; see also AR 438-42 (Dr. Taylor's April 2013 evaluation noting no motor or sensory loss and slight weight limits to lifting and carrying). In any case, it is the ALJ's province to synthesize the medical evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts

in the reports, and to determine which reports to credit and which to reject."); Morgan, 169 F.3d at 603 (holding that ALJ was "responsible for resolving conflicts" and "inconsistencies between [doctors'] reports"). To the extent that the medical evidence may be susceptible to more than one rational interpretation, the Court must defer to the ALJ's determination. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.").

As to Plaintiff's claim that the ALJ failed to "translate" Dr. Montgomery's work restrictions from the worker's compensation context to the Social Security context, to the extent that the ALJ erred, any such error was harmless. The ALJ acknowledged the differences between workers' compensation and Social Security terminology, see AR 33, but clarified that her findings derived from the "objective clinical and diagnostic evidence used by the doctors . . . and included in the doctors' reports." AR 33. For example, Dr. Schmitter reviewed Dr. Montgomery's September 2011 report and concluded that Plaintiff had a "pretty normal exam all the way around"—noting "[t]inel sign at the ulnar nerve" but ultimately "negative" findings and "just not a whole heck of a lot [t]here." AR 547-48. Similarly, consultative medical examiners Drs. Frankel and Vaghaiwalla reviewed the objective medical record and determined that Plaintiff was still capable of fine manipulation (fingering) and had some limitations in gross manipulation (handling). See AR 81, 97. In sum, any failure by the ALJ to explain Dr. Montgomery's work restrictions in the Social Security context does not undermine her reliance on the objective aspects of Dr. Montgomery's reports. See Booth, 181 F. Supp. 2d at 1105 (citing Coria v. Heckler, 850 F.2d 245, 247-48 (3d Cir. 1984) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical

findings in reports made in the first instance for the Social Security claim . . . .")); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (noting that when analyzing medical opinions using state workers' compensation terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence'" (internal citations omitted)). Because Plaintiff has not shown how the ALJ's error would necessarily result in a different outcome, reversal is not warranted on this ground. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); Molina, 674 F.3d at 111 (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

## B. Symptom Testimony

Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living ("ADLs"), her own observation of Plaintiff from the hearing, and the opinions of Drs. Taylor and Schmitter to discount Plaintiff's symptom testimony. See JS at 24-30.

### 1. Applicable Law

The Court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as

amended) (citation omitted). The ALJ may consider, among other factors, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d 1273, 1284 n.8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

### 2. Analysis

At his hearing, Plaintiff testified that he suffers from pain "[f]rom the tip of the fingers . . . up to the arm" on both arms and that gripping things exacerbates his pain. AR 566. Plaintiff further stated that he can lift and carry about five pounds for a short distance and that he experiences difficulty gripping things like a pen, a steering wheel, or plates for prolonged periods of time. See AR 566-69. The ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony.

First, the ALJ permissibly discounted Plaintiff's credibility because his daily activities were inconsistent with the alleged "intensity, persistence and limiting effects of his symptoms"—namely "limited reaching ability, pain, and difficulty with holding items." AR 29-30. The ALJ specifically acknowledged that while Plaintiff's ADLs were "somewhat limited," the physical skills required to "take care of himself and live with extended family," which Plaintiff admitted doing, are "the same as those necessary for obtaining and maintaining employment." AR 30. Specifically, Plaintiff testified that he generally could bathe and dress himself, pick up and carry a gallon of milk, grip small objects like pens for several minutes, cook, chop soft vegetables, wash dishes, open some jars, and drive. See AR 563, 566-69. The extent of these domestic activities supports the ALJ's conclusion that Plaintiff was less

than fully credible when reporting the severity of his alleged disabling functional limitations. See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)). Where, as here, a "claimant engages in daily activities inconsistent with the alleged symptoms," an ALJ may discredit his testimony of totally disabling impairment. Molina, 674 F.3d at 1112 (citation omitted).

Second, the ALJ properly only gave "slight weight" to Plaintiff's conduct during the administrative hearing to assess Plaintiff's credibility. AR 30. The ALJ noted that while the hearing was "short-lived" and not "a conclusive indicator of [Plaintiff's] overall level of pain on a day-to-day basis," Plaintiff exuded an apparent "lack of discomfort" and showed "no evidence of pain or discomfort" while testifying for over an hour. Id. When considered alongside the other reasons for partially discrediting Plaintiff's symptom testimony, the ALJ could rely on Plaintiff's lack of apparent limitations at the hearing. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ's "observations of a claimant's functioning" at hearing are permissible as part of overall credibility assessment). The ALJ did not err in giving only "slight weight" to her observations that Plaintiff's demeanor at the hearing did not support the alleged severity of his limitations. AR 30.

Last, Drs. Schmitter's and Taylor's medical reports were a specific, clear and convincing reason for discrediting Plaintiff's subjective complaints. As discussed above, Dr. Taylor's medical examination and Dr. Schmitter's review of Dr. Montgomery's treatment records yielded mostly benign findings. Dr. Taylor opined that Plaintiff had intact sensation and was capable of fine fingering and gross handling, frequently. See AR 31 (citing AR 442). Similarly,

Dr. Schmitter concluded that Plaintiff's ability to lift and carry was not significantly impaired, that the objective record did not reflect evidence of any sensory or motor loss, that Plaintiff's medical examination findings were generally "normal," and that Plaintiff would have "no problems" with grip strength. Id. (referring to AR 547-50, 552-53). The ALJ permissibly relied on this evidence to varying degrees to discount Plaintiff's allegations of a wholly debilitating injury. See AR 29; see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

**C. RFC Determination**

Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC because the RFC was "inconsistent with the opinions of Dr. Montgomery" and with Plaintiff's "allegations of pain, numbness and tingling." JS at 42. Specifically, Plaintiff contends that the RFC erroneously fails to address "twisting, pushing, pulling, or manipulating with the hands." Id.

A claimant's RFC is the most a claimant can still do despite his limitations. See Smolen, 80 F.3d at 1291 (citing 20 C.F.R. § 404.545(a)); see also 20 C.F.R. § 416.945(a). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. See 20 C.F.R. §§ 404.1545, 416.945. A district court must uphold an ALJ's RFC

11

assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, Plaintiff argues that Dr. Montgomery's opinions and Plaintiff's subjective symptom testimony preclude the ALJ's finding that Plaintiff could perform light work. See JS at 42. As discussed above, the ALJ properly considered the opinions of Dr. Montgomery and of other consultative and examining physicians to assess the extent and severity of Plaintiff's disabling limitations. See Section II.A.2, supra. In particular, the ALJ weighed Dr. Montgomery's opinions and objective medical findings against Dr. Taylor's medical examination reports and against Dr. Schmitter's and the state agency consultative physicians' evaluations of the objective medical record. Plaintiff's contention that the "RFC does not address twisting, pushing, pulling, or manipulating with the hands" is misplaced. JS at 42. The RFC explicitly assigned Plaintiff with specific push/pull weight limitations, precluded Plaintiff from "forceful gripping or grasping," and permitted Plaintiff to "frequently, but not repetitively, handle and finger." AR 29. Likewise, the ALJ did not err in her RFC determination from her assessment of Plaintiff's subjective complaints. As noted herein, the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony. See AR 30-33; see also Section II.B.2, supra.

**D.    Step-Five Determination**

Plaintiff contends that the ALJ erred at step five of the sequential analysis, because the ALJ improperly rejected portions of Dr. Montgomery's opinion, drafted a flawed RFC, and thus posed an inaccurate hypothetical to the VE. See JS at 45.

At step five of the sequential evaluation process, the Commissioner must demonstrate that the claimant can perform work that exists in "significant

numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999) (citation omitted); 20 C.F.R. §§ 404.1560(c), 416.960(c). The ALJ may use VE testimony to obtain occupational evidence. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). The VE's testimony may constitute substantial evidence of the claimant's ability to perform such jobs if the ALJ's hypothetical question included all of the claimant's limitations supported by the record. See Robbins, 466 F.3d at 886.

Here, Plaintiff contends that the VE's proposed representative occupations are inaccurate because the ALJ's hypothetical should have incorporated Dr. Montgomery's recommended limitations. See JS at 45. As explained above, see Sections II.A.2, II.C.2, supra, the ALJ did not err in her weighing of Dr. Montgomery's medical opinions or in her assessment of Plaintiff's RFC. Accordingly, the ALJ's hypothetical to the VE and the ALJ's reliance on the VE's subsequent testimony were proper. See Bayliss, 427 F.3d at 1217 (ALJ's reliance on VE's testimony was proper where "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: September 25, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

13